UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT CHIPMAN,<br><br>    *Plaintiff*,<br><br>v.<br><br>CIGNA BEHAVIORAL HEALTH, INC. *et al.*,<br><br>    *Defendants*. | Civil Action No. 19-456 (TJK) |

**MEMORANDUM OPINION**

Robert Chipman alleges that his health insurance plan administrator, Cigna, improperly denied coverage for residential mental health treatment for his dependent. Cigna denied that coverage after determining that it was not medically necessary under Chipman's health insurance plan. After exhausting Cigna's internal review process, Chipman filed this suit. Cigna moved for summary judgment, but Chipman failed to oppose. Reviewing for abuse of discretion, the Court finds that Cigna's determination was reasonable. As a result, it will grant Cigna's motion.

**I.     Background**

Chipman sues three defendants: his employer, Merkle Group Inc. ("Merkle"); his health insurance plan administrator, Cigna Behavioral Health, Inc. ("Cigna"); and his health insurance plan itself, Merkle Group Inc. Open Access Plus Medical Benefits Plan ("the Plan"). As a Merkle employee, Chipman is a member of the Plan, a self-funded group health plan sponsored by Merkle and administered by Cigna for the benefit of Merkle employees and their dependents. ECF No. 6 ("Am. Compl.") ¶ 6. Incident to Chipman's employment with Merkle, his dependent ("Dependent") received health coverage under the Plan. *Id.* ¶ 7.

Chipman's Plan provides coverage for services "to the extent that [they] are recommended by a Physician, and are Medically Necessary for the care and treatment of an

1

Injury or a Sickness, as determined by Cigna." ECF Nos. 23-1 to 23-6 ("AR") at 2095.[1] Services are "medically necessary" when they are "required to diagnose or treat an illness, injury, disease or its symptoms; in accordance with generally accepted standards of medical practice; clinically appropriate in terms of type, frequency, extent, site and duration; not primarily for the convenience of the patient, Physician or other health care provider; and rendered in the least intensive setting that is appropriate for the delivery of the services and supplies." *Id.* at 2126.

Dependent began struggling with mental health and behavioral issues in 2015. *Id.* at 343; *see also* Am. Compl. ¶ 18. After being admitted to several hospitals and attending various programs to treat mental health issues, Dependent was admitted in late 2016 to Catalyst RTC LLC ("Catalyst"), a facility in Utah "licensed to provide Residential Treatment for 26 Adult and Youth Clients Ages 13 to 18." AR at 1357; *see also* Am. Compl. ¶¶ 19–29, 32–35. Soon after, Chipman began filing claims for coverage by submitting medical records and reports to Cigna for a retrospective review. AR at 1897; *see also* Am. Compl. ¶ 42. Chipman's claims cover two separate periods during which Dependent was treated at Catalyst. The first period covers treatment from January to May 2017, AR at 1897–1901, and the second covers treatment from May 2017 to July 2018, *id.* at 1903–07.

Dr. Karl Sieg, a board-certified psychiatrist, conducted Cigna's initial "level-one" review for the claim covering the first treatment period. *Id.* at 1897–1901. He reviewed "information submitted by [the] provider and the terms of [Chipman's] benefit plan." *Id.* at 1873. He found

---

[1] Because of the voluminous administrative record, Defendants filed it as six separate exhibits. *See* ECF Nos. 23-1 to 23-6. But the six documents are paginated with consecutive Bates numbers. Thus, for ease of reference, the Court will treat the six documents comprising the administrative record as a single filing and will refer to particular pages by their Bates number.

2

that Dependent's symptoms and behaviors did not "require[] this intensity of service for safe and effective treatment," and that Dependent's admission to Catalyst "appear[ed] to be primarily for the purpose of providing a safe and structured environment." *Id.*; *see also* Am. Compl. ¶ 43.  Dr. Sieg also determined that even if residential treatment had been necessary, the Plan would still not have covered the treatment Catalyst was providing.  AR at 1873–74; *see also* Am. Compl. ¶ 43.  Based on this review, Cigna denied coverage.  AR at 1874; *see also* Am. Compl. ¶ 43.

Chipman both appealed this denial and filed another, separate claim for Dependent's second treatment period at Catalyst.  AR at 2224, 2259.  As for the second treatment period, Dr. Liebe Gelman, another board-certified psychiatrist, conducted the level-one review of "the information submitted by [the] provider and the terms of [Chipman's] benefit plan." *Id.* at 1403; *see also id.* at 1903–07.  Like Dr. Sieg before him, Dr. Gelman found that Dependent's treatment from May 2017 to July 2018 at Catalyst was not medically necessary.  *Id.* at 1907.  Specifically, Dr. Gelman concluded among other things that "[l]ess restrictive levels of care were available for safe and effective treatment." *Id.*

Finally, shortly after Dr. Gelman finished his first-level review of Chipman's claims for Dependent's second treatment period, Dr. Mohsin Qayyum, also a board-certified psychiatrist, conducted a second-level review of Cigna's decision to deny coverage for both treatment periods. *Id.* at 1907–10.  After reviewing "the available clinical information received initially and with [the] appeal," Dr. Qayyum affirmed Cigna's decision to deny coverage for both periods.[2] *Id.* at 1394–95.  He agreed with the level-one reviewers that Dependent's symptoms did not show that the treatment at Catalyst was medically necessary given the Plan's criteria. *Id.*

---

[2] In support of his appeal, Chipman submitted a comprehensive set of Dependent's medical records that spanned over a thousand pages.  AR at 2254–3287.

3

at 1395; *see also* Am. Compl. ¶ 45.  He also found that Dependent's admission to Catalyst "appear[ed] to be primarily for the purpose of providing a safe and structured environment," and that "[l]ess restrictive levels of care were available for safe and effective treatment."  AR at 1395; *see also* Am. Compl. ¶ 45.  As a result, Cigna upheld its denial of coverage for both periods.  AR at 1394; *see also* Am. Compl. ¶ 45.

After receiving letters detailing Dr. Gelman and Dr. Qayyum's findings, Chipman requested an external review of all the first- and second-level reviews to date from Cigna's Independent Review Organization ("IRO").  AR at 1415; *see also* Am. Compl. ¶ 46.  The IRO, which is not "connected or related to [Cigna] in any way," AR at 1418, provides an independent review of Cigna's decisions, and the IRO's decisions are binding upon Cigna, *id.* at 1397.  The IRO reviewer—an independent, board-certified psychiatrist with subcertification in Child & Adolescent Psychiatry, *id.* at 1892—evaluated all the "relevant medical documents utilized in [Cigna's] review process," *id.* at 1863, as well as more information submitted by Chipman, including treatment records for the months immediately preceding Dependent's admission to Catalyst, *id.* at 1868–72; *see also id.* at 1889–90 (listing all records reviewed).  The IRO agreed with Cigna's determinations, concluding that the residential treatment "was not medically necessary," as "[t]here were alternative, less intensive approaches that could provide safe and effective treatment during this time."  *Id.* at 1890–91; *see also* Am. Compl. ¶ 47.

Chipman then filed this suit under the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. No. 93-406, 88 Stat. 829.  Section 502(a)(1)(B) of ERISA allows plan participants or beneficiaries "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

4

terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[3] Chipman claims that Dependent's treatment at Catalyst should have been covered. Am. Compl. ¶¶ 6, 49–50. Earlier this year, Defendants moved for summary judgment, ECF No. 26, arguing that the Court should uphold Cigna's decision because it was reasonable, ECF No. 26-1 ("MSJ") at 1–2. But Chipman—who is represented by counsel—failed to respond, despite having been granted two extensions of time to do so. *See* Minute Orders of Apr. 15, 2020, and Apr. 23, 2020.[4]

## II. Legal Standard

Summary judgment is usually appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "But in an ERISA case, when the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *James v. Int'l Painters & Allied Trades Indus. Pension Plan*, 844 F. Supp. 2d 131, 141 (D.D.C. 2012), *aff'd*, 738 F.3d 282 (D.C. Cir. 2013) (cleaned up).

Under ERISA, a denial of benefits is subject to de novo review unless—as is often the case—the benefit plan gives its fiduciaries discretionary authority to determine eligibility for

---

[3] Although Chipman makes a brief reference to 29 U.S.C. § 1132(a)(3)(B), which provides for equitable relief, *see* Am. Compl. ¶ 4, he does not appear to seek any relief other than reimbursement, *see* Am. Compl. at 13. Because Chipman "has an avenue for adequate relief under § 1132(a)(1)(B) to recover his benefits . . . [any] request for injunctive relief is simply a means to obtain the same relief." *Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1*, 378 F. Supp. 3d 30, 45 (D.D.C. 2019). Thus, the Court need not consider Section 1132(a)(3)(B). *See id.*

[4] On April 30, 2020—two days after the most recently extended deadline passed—Chipman's counsel represented that she would be filing an opposition to Defendants' motion that same day, along with a "Motion Requesting Acceptance of Late Filed Brief." ECF No. 35. But she filed neither document.

benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a plan grants that discretion, "a deferential standard of review [is] appropriate," *id.* at 111, and the question before the court is whether a decision to deny benefits was reasonable, *Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1454 (D.C. Cir. 1992).[5] The reasonableness "depends in large measure on what [the] determination [is] and the stated reasons behind it." *Marcin v. Reliance Standard Life Ins. Co.*, 138 F. Supp. 3d 14, 23 (D.D.C. 2015), *aff'd*, 861 F.3d 254 (D.C. Cir. 2017) (citation omitted); *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (noting that the plan administrator must provide a "full and fair assessment of claims and clear communication" to the insured of the "specific reasons for benefit denials" (internal quotation marks omitted)). A plan administrator's decision was reasonable if it was "the result of a deliberate, principled, reasonable process and if it is

---

[5] Because the Plan gives Cigna the kind of discretion described in *Firestone*, *see* AR at 2121, Cigna's benefit determinations are entitled to deference. The relevant portion of the Plan states:

> The Plan Administrator delegates to Cigna the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan. Such discretionary authority is intended to include, but not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments.

*Id.* Because there are "no magic words required to trigger the application of one or another standard of judicial review," the critical inquiry is whether it "appear[s] on the face of the plan documents that the fiduciary has been given the power to construe disputed or doubtful terms or to resolve disputes over benefits eligibility." *Block*, 952 F.2d at 1453 (cleaned up). "What counts, in sum, is the character of the authority exercised by the administrators under the plan," *id.* at 1454, and here the character is deferential, *see Buford v. UNUM Life Ins. Co. of Am.*, 290 F. Supp. 2d 92, 97 (D.D.C. 2003). And Plaintiff has not "identified a conflict of interest arising from [an entity's] dual role as payor and administrator" that would afford a stricter standard of review. Minute Order of Oct. 14, 2019 (quoting *Crummett v. Metro. Life Ins. Co.*, No. 06-cv-1450 (HHK), 2007 WL 2071704, at *4 (D.D.C. July 16, 2007)).

6

supported by substantial evidence." *Marcin*, 138 F. Supp. 3d at 22 (quotation omitted). Substantial evidence means "more than a scintilla but less than preponderance." *Id.* (quotation omitted). And "[t]he Court's review of a benefits determination may only be based on the record available to the administrator or fiduciary at the time the decision was made." *Boster v. Reliance Standard Life Ins. Co.*, 959 F. Supp. 2d 9, 23 (D.D.C. 2013) (quotation omitted).

Courts may not grant a motion for summary judgment as conceded for want of opposition. *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). Rather, the Court must independently determine whether the moving party has carried its burden, *id.*, but need not "do counsel's work" and consider arguments that the non-moving party elected not to raise, *Kirkland v. McAleenan*, 13-194 (RDM), 2019 WL 7067046, at *25 & n.17 (D.D.C. Dec. 23, 2019) (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)).

### III. Analysis

Upon review of the administrative record, the Court finds that Cigna's decisions to deny Chipman's claims followed a deliberate, reasoned process and were supported by substantial evidence.[6]

#### A. Cigna's Process Was Reasonable

The record reveals that Cigna arrived at its determinations after employing a sufficiently robust decision-making process. Cigna's first-level reviewers represented that they reviewed all

---

[6] Merkle appears to have played no role at all in the benefits decisions Chipman challenges, and so it cannot be held accountable for Cigna's decisions. *Anthony*, 378 F. Supp. 3d at 46 ("Because District Lodge 1 made no decision, there is no basis to find that District Lodge 1 acted arbitrarily or capriciously."); Am. Compl. ¶ 41 ("Merkle has delegated to Cigna the authority to interpret and apply terms of the Plan and to make factual determinations regarding claims for benefits."); *see also Boster*, 959 F. Supp. 2d at 28–29 (holding at summary judgment that "[s]ince the original complaint fails to plausibly allege that [the plaintiff's former employer] had or exercised fiduciary responsibility in denying [the plaintiff's] benefit claim, [the former employer] cannot be held liable for his loss of benefits"). As a result, the Court will grant Defendant's request that Merkle be dismissed as a party. *See* MSJ at 32.

the information submitted by the relevant provider, AR at 1403, 1873, and the second-level reviewer represented that he reviewed "[a]ll the original information in [Dependent's] file [and] the information submitted with [the appeal request]," *id.* at 1394.[7]  Cigna provided a multi-layered review process that allowed beneficiaries like Chipman to submit additional documentation for consideration, *see id.* at 1404, 1874–75, an opportunity of which Chipman appears to have availed himself, *see id.* at 2254–3287.  It also provided Chipman the chance to seek independent review from the IRO—a third party outside Cigna, *see id.* at 1397—an opportunity of which Chipman also took advantage, *see id.* at 1882–92.

Based on four board-certified psychiatrists' analyses of the available information—the last of which was cumulative of the three previous analyses and conducted by an independent reviewer—Cigna determined that the Plan did not cover Dependent's treatment at Catalyst.  *Id.* at 1394, 1403, 1873, 1890–92.  The Court finds this process reasonable.  It also tracks what other courts in this District have found reasonable.  For example, in *Dawson v. Pension Plan for Office Employees of International Brotherhood of Electrical Workers*, the court found a plan's decision to rely on the opinions of three independent medical professionals was reasonable in part because they each "had all the evidence then available," including the material provided by the plaintiff. 107 F. Supp. 3d 15, 20 (D.D.C. 2015).  Likewise, in holding that a plan administrator acted reasonably, the court in *Foster v. Sedgwick Claims Management Services, Inc.* noted that the administrator relied on the opinions of two independent physicians who had "review[ed] all of the medical documentation in [the] claim file." 125 F. Supp. 3d 200, 209 (D.D.C. 2015), *aff'd*, 842 F.3d 721 (D.C. Cir. 2016).

---

[7] As discussed above, as part of his appeal, Chipman submitted a vast array of Dependent's medical records, including records from Dependent's treatment at Catalyst as well as from prior treatment.  *See* AR at 2254–3287.

Here, the record shows that Cigna's review process similarly relied on the opinions of medical professionals who based such opinions on the available medical documentation. As discussed above, both first-level reviewers represented that they reviewed all the information submitted by the relevant provider, AR at 1403, 1873, and Chipman offers no reason to doubt that. The second-level reviewer similarly represented that he based his opinion "upon the available clinical information received initially *and with this appeal*." *Id.* at 1395 (emphasis added); *see also id.* at 1394 (noting that "[a]ll the original information in [the] file, the information submitted with this request and the terms of [the] benefit plan were reviewed"). Cigna's process reasonably relied on the informed opinions of its doctors. *See Marcin v. Reliance Standard Life Ins. Co.*, 861 F.3d 254, 265 (D.C. Cir. 2017) ("[A] 'reliable' opinion is one that includes an examination of all pertinent evidence."). That Cigna ultimately credited the opinions of its medical specialists over the opinions of Dependent's treating therapists to the contrary, *see* AR at 1870–72, 2301–02, 2308, 2330, 2332, does not render its decision unreasonable. *See Dawson*, 107 F. Supp. 3d at 19 ("The opinions of a treating physician are not entitled to a presumption of deference and plan administrators do not have to explain why they credit *reliable* evidence that conflicts with a treating physician's evaluation." (emphasis added)). Thus, the record shows that Cigna arrived at its conclusion after employing a reasoned and deliberate process.

Although he did not oppose Defendants' motion, Chipman alleges in his Complaint that the IRO "discounted the severity of [Dependent's] conditions, while also failing to address the evidence supporting his placement in a residential treatment facility." Am. Compl. ¶ 47. Chipman offers no support for this allegation, and the record shows otherwise. The IRO reviewer considered the entire clinical picture from spring 2015 through Dependent's discharge

9

from Catalyst, including medical records and treatment notes Chipman provided from therapists who evaluated Dependent at Catalyst and previous facilities. AR at 1882–92. The reviewer detailed the history of Dependent's conditions, reviewed the opinions of Dependent's treating therapists, and specifically addressed the recommendations for placing Dependent in a residential treatment center. *Id.* Chipman may disagree with how the IRO weighed those records, *see* Am Compl. ¶ 47, but that is not enough to show that Cigna's decision was unreasonable, *see Foster*, 125 F. Supp. 3d at 210 ("Plaintiff, in turn, points to no evidence that [the claim's administrator] ignored the tests she provided; she simply does not like the weight it afforded them."). And in addition,, a decision is not unreasonable just because it does not explicitly address or respond to every discrete piece of clinical information. *See, e.g.*, *Frame v. Hartford Life & Accident Ins. Co.*, 257 F. Supp. 3d 1268, 1278 (M.D. Fla. 2017) ("[A] reviewing physician is not required to address every single piece of evidence produced by a claimant." (citation omitted)).

In short, Chipman has provided no evidence to doubt the process reflected in the administrative record, which appears to have been a methodical and comprehensive review that evaluated the relevant clinical information.

### B. Substantial Evidence Supported Cigna's Decisions

Cigna's decisions were also based on substantial evidence, including the informed opinions of its physicians. As discussed above, to be medically *necessary* under the Plan, treatment must be rendered in the least intensive appropriate setting. AR at 2126. Cigna's physicians determined that Dependent's treatment could have been safely and effectively provided at a less restrictive level of care, *id.* at 1901, 1907, 1910, and Cigna's reliance on that determination was reasonable, *see Dawson*, 107 F. Supp. 3d at 20. Specifically, the record shows that Drs. Sieg and Gelman explicitly relied on a substantial subset of Dependent's daily treatment reports and periodic progress reports from Catalyst, from which they reasonably

concluded that safe and effective treatment could be achieved in a less intensive setting.  *See* AR at 1897–1901, 1903–07.[8]  And in conducting his second-level review, Dr. Qayyum also explicitly relied on a substantial subset of the records Drs. Sieg and Gelman had considered, as well as new information Chipman submitted.  *Id.* at 1907–10.[9]  These informed medical opinions are themselves evidence on which Cigna could reasonably rely.  *See Loucka v. Lincoln Nat'l Life Ins. Co.*, 334 F. Supp. 3d 1, 11 (D.D.C. 2018)  (referencing "substantial, reliable evidence in the form of five separate medical opinions").[10]  Additionally, the IRO reviewer's affirmation of Cigna's decisions was based on his or her own review of a comprehensive set of Dependent's medical records from 2015 through 2017—including over a year of records from Catalyst, AR at 1889–90.[11]  While the record contains plenty of information that would have supported the opposite conclusion, "[t]he ability to choose among conflicting evidence is, essentially, a natural outgrowth of the discretion that the plan affords to the plan administrator." *Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 48 (D.D.C. 2005) (noting that "a deferential standard of review allows

---

[8] Dr. Sieg also concluded that Dependent's treatment at Catalyst was mainly to "promote healthy growth, stimulate learning, inspire motivation, and develop personal well-being," AR at 1874, rather than "to diagnose or treat an illness, injury, disease, or its symptoms," as the Plan requires, *id.* at 2126.

[9] Dr. Qayyum also concluded that the treatment was "primarily for the purpose of providing a safe and structured environment," AR at 2231.  This violates the Plan's policy that treatment is not medically necessary when it is "primarily for the convenience of the patient, Physician, or other health care provider." *Id.* at 2126.

[10] *See also Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir. 2006) ("[In reviewing medical files], doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation."); *Dreyer v. Metro. Life Ins. Co.*, 459 F. Supp. 2d 675, 682 (N.D. Ill. 2006) ("[A claim administrator's] reliance on the opinion of a non-treating psychiatrist who reviewed the Plaintiff's medical information was not arbitrary or capricious.").

[11] Indeed, the IRO explicitly noted that Dependent was receiving effective non-residential treatment right *before* beginning at Catalyst.  AR at 1890; *see also id.* at 1324–32.

the plan administrator to reach a conclusion that may technically be incorrect so long as it is reasonably supported by the administrative record"). The record contains much more than a scintilla of evidence supporting Cigna's conclusion that Dependent's treatment could have been provided in a less restrictive setting.

Substantial evidence also supported Cigna's conclusion that the treatment Catalyst provided—even if it had been medically necessary—would not have satisfied the Plan's requirements for residential mental health treatment. AR at 1873–74. For starters, Catalyst would not have qualified as an appropriate residential mental health treatment provider. Under the Plan, a Mental Health Residential Treatment Center is an institution that "provides a subacute, structured, psychotherapeutic treatment program[] under the supervision of Physicians [and] 24-hour care." *Id.* at 2098. But Dependent's treatment plan and other records from Catalyst show that the facility did not satisfy these requirements. *Id.* at 1171–80, 1901. Instead, the treatment at Catalyst appears to have consisted of medication management with individual, group, and family therapy. *See id.* at 1171–80. For example, the treatment included daily individual therapy, weekly family therapy by phone, and daily group therapies, for "a minimum of 9 hours of therapy per week." *Id.* at 408. Additionally, the guidelines Cigna uses when evaluating medical necessity in the mental health context, *see id.* at 1936–2069, require that residential mental health treatment include a discharge plan, the formulation of which must "start at the time of admission," *id.* at 1969.[12] However, the record shows that this never happened for

---

[12] Cigna explains that the practices embodied in its guidelines are intended to "serve as a decision support tool to help define the most appropriate treatment setting and help assure consistency of care for each individual." AR at 1939. Employing guidelines such as these—assuming they are consistent with the Plan itself and are properly applied—is the sort of exercise of discretion Cigna was empowered to do. *See Doe v. MAMSI Life & Health Ins. Co.*, 471 F. Supp. 2d 139, 147 (D.D.C. 2007) ("[I]n utilizing [its internal criteria], MAMSI was attempting

Dependent. Dependent's *treatment* plan—which Catalyst created when he was admitted—includes no discharge date. *Id.* at 1171; *see also* 1910 ("unknown discharge date"). As Defendant correctly notes, "[h]ad Catalyst provided Residential Treatment, the formulation of a discharge plan would have begun on day one and been based on the clinical picture." MSJ at 24. Thus, Cigna's conclusion that Catalyst did not provide residential mental health treatment as defined by the Plan was supported by substantial evidence.

Chipman also alleges in his Complaint that the information Cigna reviewed did not support its conclusion that Dependent's condition and treatment did not meet the criteria for coverage under the Plan. Am. Compl. ¶¶ 47, 49.[13] In support of this allegation, Chipman cites excerpts from two letters in which Dependent's current or former treating therapists recommended residential mental health treatment. *See id.* ¶¶ 33, 38. But even assuming these excerpts are accurate, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), they amount to little more than contrary professional conclusions based on similar clinical information. Such a disagreement does not, without more, render Cigna's denial unreasonable. *See Dawson*, 107 F. Supp. 3d at 19–20. As discussed above, Cigna may credit the opinions of its own medical professionals over those of Dependent's treating therapists. *See id.*; *see also Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 699 F. Supp. 2d 185, 205 (D.D.C. 2010), *aff'd*, 644 F.3d 427 (D.C. Cir. 2011) ("It is not an abuse of discretion to value the opinions of the insurer's own medical consultants over those of the participant's treating physician." (cleaned

---

to apply or administer the medical necessity clause in the Group Certificate, as the Group Certificate and Group Agreement authorize it to do.").

[13] Chipman does not argue that Cigna's reviewers failed to examine these records such that their opinions were unreliable. *See Marcin*, 861 F.3d at 265 ("We think a 'reliable' opinion is one that includes an examination of all pertinent evidence." (quoting *Black & Decker Disability Plan*, 538 U.S. at 834 )).

up)).  Further, "there is no heightened burden of explanation placed on the plan administrator if it decides to reject a treating physician's opinion."  *Marcin*, 861 F.3d at 265.

## IV. Conclusion

The administrative record, to be sure, paints a picture of Dependent as troubled and in need of mental health treatment.  But given the deferential standard this Court must apply, it cannot say that Cigna's decision not to cover the residential mental health treatment here was unreasonable or unsupported by substantial evidence.  Defendants have therefore carried their burden, and the Court will grant their motion for summary judgment.  *Marcin v. Reliance Standard Life Ins. Co.*, 895 F. Supp. 2d 105, 113 (D.D.C. 2012) ("A court cannot overturn a decision so long as it is reasonable, even if an alternative decision also could have been considered reasonable." (cleaned up)).  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 14, 2020